(Clark County, Ohio, Probate Court.)

CHAS. ADLARD v. WM. F. STOCK-
STILL.

(1). Where an assignee brings an action in the probate court. to sell the real estate of an assignor, on cross-petition of a defendant, such court has jurisdiction to reform a mortgage.

(2). If a mortgage could have been reformed as against the assignor at the time of the assignment it will be reformed as against the assignee.

ROCKEL, J.

On————, 1895, Mr. F. Stockstill made an assignment of all his property to Chas. Adlard. Sometime thereafter the assignee brought an action in this court to sell the real estate assigned. In the partition Horace W. Stafford was alleged to have or claim to have some interest therein and was made a party defendant, and filed the following answer which correctly states all the facts in the case, there being no claims other than general creditors.

"Now comes Horace W. Stafford, and leave of court being first granted to file an amendment to his original answer and cross-petition herein, files this his amendment to said answer and cross-petiiton and says, that on the 9th day of September, 1893, the defendants Wi liam F. Stockstill and Jennie Stockstill, his wife, duly executed and delivered their certain mortgage deed to secure the payment of the promissory note in his original answer and cross petition described, and thereby intended to convey to him the following described premises, situate in the county of Clark, state of Ohio, and in the town of New Carlisle, and bonded and described as follows: Being all of lots No. 330, 331, 328 and 329 in Rannels, Stockstills and Hoffa's addition to the town of New Carlisle, Ohio, but by mutual mistake of all parties described said lot No. 328 in said Rannells, Stockstill and Hoff's addition to said town of New Carlisle, Ohio as lot No. 338, in said addition to said town of New Carlisle, Ohio, which error was made by the scrivener, and was, in fact, a clerical error only and made by the mutual mistake of the parties thereto.

That at the time the execution and delivery of said mortgage the said William F. Stockstill and Jennie Stockstill were not the owners of any lot in said Rannels, Stockstill and Hoff's addition aforesaid, of No. 338, and were not the owners of any lot in said town of New Carlisle of the No. of 338.

"This defendant further says that his said mortgage aforesaid was duly left with the recorder of Clark county, Ohio, for record on the 11th day of September, 1893, at 8:40 A. M, and was by said recorder duly recorded in mortgage book No. 75p, age 594-550, of his records.

"This defendant further says that the mistake aforesaid in the description of said lot No. 328, was unknown to him or said William F. Stockstill or Jennie Stockstill until after the former order of sale, appraisment and advertisement of sale of said premises in the petition described and was not discovered until after the report to this court, that said lots did not sell for want of bidders.

"This defendant therefore prays that the description of said lot refered to as lot No. 338, in his said mortgage be reformed so as to describe said lot as No. 328 in Rannells, Stockstill and Hoffa's addition to the town of New Carlisle, Ohio, that the same may be appraised and sold according to law in such case made and provided by statute, that the proceeds arising from same be applied to the payment of his said note in his original answer and cross-petition described ; that his said mortgage be found and declared to be the first lien on said lot No. 328 as aforesaid, and that he may have such other proper relief to which he is entitled either in law or equity.''

The questions thus presented to the court are, 1st : Has the court jurisdiction to reform the mortgage. 2nd : Can a mortgage be reformed as against the property of an assignor after the same has passed into the hands of an assignee in trust for the benefit of creditors?

These will be considered in their order. The power, or jurisdiction if you desire to so designate it, of the probate court in matters of assignment has been before considered by this court, but not on a like question.

In the case of Kiefer v. Spence, decided in 1891, it was held that in assignment cases this court has authority upon the answer and cross-petition of a mortgagee to give him affrmative relief, etc. It was stoutly contended in that case that this was in effect the foreclosure of a mortgage and the exercise of an equity power, only existing in the court of common pleas. In a full and somewhat lengthy examination of the statute in relation to assignments and the decisions of our supreme court the conclusion was then reached that the probate court "had full, ample and complete jurisdiction to determine all questions, either equitable or legal, that are necessary to do equity and justice to all parties in interest in order to enforce the proper and just administration of the trust.''

Upon a careful re-reading of the opinion in that case, I see no reason to depart from this conclusion. Several cases however, have been before the supreme court in reference to jurisdiction in assignment cases

since that time, which will be referred to hereafter.

Again in Wilson v. Swagart, 31st Bull., 353, in this court, it was held, that a mortgagee cannot maintain an action of foreclosure on a mortgage claim in the court of common pleas, after the debtor and owner of the lands has made an assignment for the benefit of his creditors, and that in all matters of assignment where the probate court has power to grant complete relief, its jurisdiction is exclusive, unless expressly taken therefrom by statute.

This decision met with considerable comment, favorable and unfavorable from the bar throughout the state, 31 Bull., 4, 13, 29, 65, 97, 81, 113, 129, 147.

In the recent case of Havens v. Horton Jr., 34 Bull., 78. 53 Ohio, 8. The supreme court has arrived at the same conclusion, and in the still more recent case of Mercer v. Cunningham, 34 Bull., 242, Judge Shauck laid down these two propositions, 1st: The filing of the deed of assignment and qualification of the assignee confer upon the probate court jurisdiction over all the assigned property. 2nd: The jurisdiction so conferred is exclusive in all respects in which it is adequate.

In the opinion it is also said: "All legislation affecting the jurisdiction of the probate court has been with a view of its enlargement."

In Klapp v. Banking, etc., 50 Ohio St., 537, it is said: "Although the probate court is of limited and statutory jurisdiction, it is we think, a mistake to suppose that it has no equit powers unless the same are expressly conferred. A power given to make a particular order implies authority to hear and dispose of all questions which it is necessary to settle before making of such final order, unless the needed authority is distinctly denied."

Again, "Now in order to ascertain what amount is in the hands of the assignee, subject to distribution among general creditors, it is necessary that the fact of who are general and who preferred creditors, should first be ascertained. This involved the very matter in dispute in this case.

"The court must necessarily decide whether there are preferred creditors, and who they are. No distribution among general creditors can be made until this is done."

This language is peculiarly applicable to the case at bar. Before an order of distribution can be made among general creditors, it would be necessary to determine whether the holder of this mortgage claim is a general or a preferred creditor. The trust cannot be terminated without such a decision.

Again in the case of Clapp v. Banking supra. the court quotes from 13 Am. & Eng. Enc. of Law, that "an equitable lien is a right not recognized at law, to have a fund or specific property, or its proceeds applied, in whole or in part, to the pay-

ment of a particular debt or class of debts." And holds that under section 6351, which provides that where there is any question in regard to title of the lands to be sold, the assignor may commence a civil action in the probate court, and that such court may determine the question involved in regard to the title to the same; that such a lien may be passed upon by the probate court. The claim under consideration in the case at bar is an equitable lien, and therefore comes within this decision.

In McNeil v. Hagerty, 31 Bull., 358, it is said, "All persons claiming an interest in or upon the fund are subject to the summary jurisdiction of the court". Using the word "court", as meaning probate court.

In the case of Doan v. Biteley, it was held that (1). "The proceeding of an executor or administrator to sell the real estate of the deceased, to pay the debts and costs of administering his estate, whether prosecuted in the court of common pleas or probate court, is a civil action, in which any person may be made a defendant, who has or claims an interest in the land, or who is a necessary party to a complete determination of any question involved in the action.

"(2). The probate court has jurisdiction to try any question of fact arising in such action therein prosecuted, or afford the parties a trial by jury, when the nature of the issues entitle them to a jury trial or render it appropriate.

"(3). Proper practice in such cases requires all persons claiming an interest in the land, to be brought before the court and all questions affecting the title adjudicated and settled, that purchasers may buy with safety and the property bring its fair value".

This is applicable to the case at bar in this, that the court decides what is proper and commendable practice in civil actions brought to sell real estate, and defines who are proper parties in all civil actions.

The statute in reference to assignments gives to the assignee in specific words, the right and duty where there are conflicting interests in the land to be sold, to commence a civil action, to determine same. In this respect the statute is broader, or rather more specific in relation to the assignees than to executors or administrators.

In the case at bar, if this court has no jurisdiction to reform the mortgage, then the mortgagee must commence an action in the court of common pleas to have the same reformed, and this trust must remain open until the matter is there adjudicated.

Upon this phase of the question, the following from the opinion of Doan v. Biteley supra, is forcibly applicable.

"The policy of our legislation has long been opposed to the necessity of a resort to different jurisdictions and multiplicity of actions, in order to obtain a full and final relief to which parties may be entitled,

and in favor or clothing, tribunals once acquiring control of the subject matter of a controversy and of the parties, with jurisdiction, if capable of exercising it, to determine the ultimate rights of the parties and administer to them their complete remedy.

"The policy is a commendable one, with which the statute, making actions like the one under consideration, civil actions, and giving the probate court co-ordinate jurisdiction with the court of common pleas, is in harmony."

It seems to me therefore, that the stattue and these decisions furnish three grounds for upholding the jurisdiction of this court, in the case at bar.

1st. It is necessary in order to determine whether the mortgagor is a preferred' or general creditor, so that a distribution to general creditors may be made.

2nd. That the statute giving the assignee power to commence a civil action in this court, clothes this court with power to hear and determine all claims, either legal or equitable, in relation thereto.

3rd. That this court has jurisdiction in order to prevent a multiplicity of suits and expedite the settlement of the trust.

This brings us to the second question. Will a court reform a mortgage as against the property of an assignor after it has passed into the hands of an assignee in trust for the benefit of creditors?

The case of Davenport v. Scovill, 6th Ohio St., 459, settles the law, for Ohio, that as between the original parties where the defect of the mortgage is one of description only, that it will be reformed. In the same case it is held because former courts had so held, that if the defect was one relating to the execution or the recording of the instruments, it could not be reformed.

In Strang v. Beach, 11th Ohio St., 287, the court quotes the old equitable rule that a mortgage will be reformed not only between the parties, but those claiming under them in priority, as heirs, legatees, devisees, voluntary grantees, judgment creditors, or purchasers from them, with notice of the facts.

And again in Bundy v. Iron Co., 38th Ohio St., 312, it is held, if the statute does not prevent, an equitable mortgage will have priority over all lien holders and other claimants, except bona fide purchasers. This is an adherence to a doctrine well established in equity. The reason therefore that a mortgage defectively executed or not recorded, or a chattel mortgage not recorded or left for record, is void, as against the assignee, while good as between the parties, is by reason of our statutory enactments.

The recording acts only apply to bona fide purchasers for value. And our courts have held that an assignee is not such a purchaser.

Thus in Mannix v. Purcell, 46 Ohio St., 135, it is said: "All property subject at law or in equity to the payment of John

B. Purcell's debts, whether held nominally in trust or not, passes by the assignment to the plaintiffs below.

"No higher or better right or title to any of the property passes to the assignee than the assignor held. His creditors acquired no new right or remedies in or against it by force of the assignment.

"The assignee simply represents them and their rights which he has undertaken to enforce by the plain processes appointed by statute. They do not in any sense stand to the assigned property in the relation of purchasers."

In Morgan v. Kinney, 38 Ohio St., 316, Judge Longworth says: "The doctrine is well settled, that is respect to real estate the assignee for the benefit of creditors stands in the shoes of the assignor, and takes no greater estate than that held by him.

"He takes subject to all liens and incumbrances existing at the time of assignment, and is not to be regarded in equity as a bona fide purchaser without notice."

In the case of Clapp v. Banking, supra, it was held that the term lien in its general acceptation, includes equitable liens, and therefore we are brought to the conclusion that the language of the court in the two decisions last referred to, would justify us in holding that the assignor in the present case took the property subject to the equitable lien of the mortgagee in this case.

Again in McNeil v. Hagerty supra, the judge rendering the opinon says: "The effect of the assignment is to devote the property absolutely to the satisfaction of the debts of the assignor just as they existed at the time of the assignment."

At the time of the assignment this mortgage could have been reformed and held as a lien on the property of the assignor, therefore if the assignee receives the property subject to all claims as they existed at the time of the assignment, he would take it subject to the lien in question.

In Simon v. Oppenheimer, 20th Federa Reporter, a somewhat similar question under the Iowa law was under consideration by the federal court. Here the court seemed to hold that an equitable lien against the assignor would be enforced as against general creditors, and could only be questioned by a lien holder upon the property on which it is sought to impress the equitable lien. The language used is as follows: "The debts described in the mortgages being actually due to the mortgagor, the title passed by the execution of the mortgages, and the instruments were therefore valid and binding upon the mortgagor.

"Under these circumstances the assignee stands in the same position as the assignor under the statute of Iowa. He takes the property subject to all the rights and equities which the mortgagees could have asserted against the assignor. (Roberts v. Corbin, 26 Iowa, 315).

"Having been given to secure an actual

indebtedness, the validity of the mortgage can only be questioned by a creditor who can show a superior right or equity and who has taken the proper steps to assert the same by obtaining a lien upon the property or a judgment with the right to a lien if property can be discovered."

In the case at bar there are no judgment creditors or lien holders on the premises upon which it is sought to impress the mortgage lien of Mr. Stafford.

In Mellon's appeal 37 Pa. St., 129, it was held that an unrecorded mortgage would have a preference over general creditors; on the theory that as it was valid between the original parties, and the assignee stood in the shoes of the assignor, it would have the same effect after the assignment as before. This is not the law in Ohio, by reason of our recording acts. But the language used is pertinent as throwing light upon the subject of the assignee's position in reference to the proprety of the assignor. The following is from the opinion:

"The question therefore is, whether the mortgage was a lien upon the lands in the hands of the assignee, although it was not recorded until after the assignment. If it was, then it is entiled to full payment; if it was not, then it is only entitled to a dividend with the general creditors. The object of the statute is construed to have been to affect purchasers and creditors, either mortgagors or judgment creditors— against secret liens. But an assignee holding in trust for the benefit of creditors, is not as such a creditor, nor is he a bona fide purchaser for value.

In Wolf v. Eichelberger, 2nd Penn., 346, it was held that neither the assignee, nor the general creditors are such purchasers. The assignee is the representative of the assignor and is affected by all the equities which existed against the property in the hands of the assignor, enjoying his rights except that the property is protected from execution in his hands. He is in no sense the representative of the creditors, and therefore can not take to himself any of their rights, and even if he could, they do not take as purchasers or as lien holders under the assignment. Proceedings in bankruptcy are very much similar to those provided by assignment laws.

In Stewart v. Platt, 101 U. S., 731, it is said: "In Yeatman v. Savings Insurance, 95 U. S., 589, we held it to be an established rule that, except in cases of attachment against the property of the bankrupt, within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens or incumbrance, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt.

"He takes the property in the same plight and condition that the bankrupt held it. Windsor v. McLean, 2 Story, 493 "

It therefore seems to me that as the assignee takes the property subject to the same rights that existed at the time of the assignment, and no creditor having a superior equity, to the mortgagee, and the same not being prevented by statute, it is proper to hold that the mortgage in the present case may and should be reformed and declared a lien upon the lot which it was the intention of the parties to have described in their mortgage.